## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                              Case No. 06-11183-DHW
                                                   Chapter 13
HOLLY M. MATTHEWS,

      Debtor.

_____

HOLLY M. MATTHEWS,

      Plaintiff,

v.                                                 Adv. Proc. No. 07-01005-DHW

JOHNNY W. JOHNSON d/b/a
HUGHES JOHNSON CHRYSLER DODGE
JEEP,

      Defendant.

### MEMORANDUM OPINION

On March 19, 2007 the defendant Johnny W. Johnson ("Johnson" or "defendant") filed a motion for summary judgment (Doc. #11) in this adversary proceeding. Holly M. Matthews ("Matthews" or "plaintiff") filed a response (Doc. #13) and brief (Doc. #15) in opposition to the motion. The motion came on for hearing on April 26, 2007. At the hearing, the plaintiff was represented by her counsel, Cameron A. Metcalf, and the defendant was represented by his counsel, Jeffrey L. Ingram. For the reasons that follow, the court concludes that the defendant's motion is well taken and due to be granted.

### Jurisdiction

The court's jurisdiction in this adversary proceeding is derived from 28 U.S.C. 1334 and from a general order of the United States District Court for this district referring title 11 matters to the Bankruptcy Court. Further, with regard

to this motion for summary judgment, the court's jurisdiction extends to the entry of a final order or judgment with the consent of the parties.[1]

## Background

On April 21, 2006, Matthews entered into a "Retail Installment Contract and Security Agreement" with Johnson, an automobile dealer, for the purchase of a 2005 Chevrolet . *See* Def's Mot. for Summ. J., Ex. B. Johnson arranged for Centrix Funds, LLC ("Centrix") to provide financing to Matthews for the unpaid purchase price of the car.[2] In the sales contract between Matthews and Johnson, Johnson assigns his rights under the contract to Centrix. In this adversary proceeding, Matthews contends that Johnson violated the *Truth In Lending Act*, 15 U.S.C. §§ 1601 *et. seq.,* in conjunction with that transaction and seeks to recover statutory and compensatory damages and attorney's fees.

First, Matthews maintains that a $399 processing fee and a $330 premium for Guaranteed Automobile Protection (GAP) were not disclosed in accordance with TILA requirements because they were not properly grouped among the finance charges. In addition, Matthews contends that the GAP insurance disclosures were not made by the proper party. Finally, Matthews avers that, due to the exclusion of the $399 processing fee and the $330 GAP insurance premium from the finance charge total, the disclosed interest rate was misstated by more than the tolerance allowed under TILA.

---

[1] The defendant disputes that the underlying claims in this adversary proceeding evoke this court's core jurisdiction. Nevertheless, the defendant expressly consents to this court's entry of a final order or judgment with respect to this motion for summary judgment.

[2] The plaintiff filed this complaint against both Johnson and Centrix but dismissed Centrix after Centrix filed a notice of bankruptcy.

2

## Discussion

The standard for summary judgment established by Fed. R. Civ. Proc. 56 is made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. Proc. 7056. The rule provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. Proc. 56(c).

Summary judgment is appropriate when "there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "In making this determination, the court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The party moving for summary judgment "bears the burden of proving that no genuine issue of material fact exists." *Information Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). Once met, the burden shifts to the non-movant to "show a genuine dispute regarding any issue for which it will bear the burden of proof at trial." *Id.* at 1224-25.

A. The $399 Processing Fee

15 U.S.C. § 1605(a) defines the term "finance charge." Generally, a finance charge, as used in TILA, is a charge imposed by the creditor which is "incident to the extension of credit." 15 U.S.C. § 1605(a). That definition, however, expressly excludes "charges of a type that are payable in a comparable cash transaction." *Id.; see* 12 C.F.R. 226.4(a) (Regulation Z) (defining the term "finance charge" and excluding from that definition any charge of a type payable in a comparable cash transaction).

The record includes the affidavit of Mike Morales, the finance manager at Johnson's auto dealership. *See* Def's Mot. for Summ. J., Ex. A. There,

3

Morales attests that the $399 charge itemized in the sales contract represents a fee ". . . charged on every retail transaction whether the transaction is a cash sale or a financed sale. That fee is for complete cosmetic detailing materials, administrative services, notary services, courier services, fuel and hazardous waste removal such as oil filter, antifreeze and tires." *Id.* at 2.

Matthews has not offered any evidence to contradict Morales's affidavit that the $399 processing fee is charged on all sales, cash or credit. Hence, the court finds that the processing fee is not a charge incident to the extension of credit. Therefore, as a matter of law, the defendant did not violate TILA by failing to group the fee with the finance charges.

B. The $330 GAP Insurance Premium

Matthews contends that the $330 GAP insurance premium should have been included among the finance charges because Johnson failed to make the necessary disclosures to permit its exclusion.

Regulation Z provides that fees for debt cancellation coverage may be excluded from the finance charge if 1) the coverage is not required by the creditor and that fact is disclosed to the borrower in writing; 2) the premium for the initial coverage is disclosed; and 3) the borrower signs or initials a written request for the coverage after receiving the first two required disclosures. 12 C.F.R. 226.4(d)(3).

The affidavit of Morales reveals that in conjunction with the purchase of the automobile on April 21, 2006, Matthews first signed the "Certificate of Insurance Guaranteed Automobile Protection" form and then signed the "Retail Installment Contract and Security Agreement." *See* Def's Mot. for Summ. J., Ex. A. The "Certificate of Insurance Guaranteed Automobile Protection" form, which was signed by Matthews, contains the following language:

> **AGREEMENT –** Although not required to do so, YOU have elected to participate in OUR Financial GAP Program.
>
> **BY MY SIGNATURE BELOW, I ACKNOWLEDGE AND AGREE THAT MY ACCEPTANCE OR REJECTION OF**

4

**THIS CERTIFICATE IS VOLUNTARY AND IS NOT A CONDITION PRECEDENT TO, OR A CONSIDERATION REQUIRED TO OBTAIN CREDIT**

**The Charge to YOU for GAP is $330.**

Def's Mot. for Summ. J., Ex. C (emphasis in original). Matthews has not offered any evidence disputing the facts alleged in Morales's affidavit or the agreements signed by the parties.

The court finds that the disclosures relating to GAP insurance were sufficient to permit the exclusion of the premium from the finance charge disclosure under TILA. Clearly, Matthews was advised in writing that the coverage was not required and of the premium cost. She signed the request for coverage after being so advised. Therefore, the court finds as a matter of law that the GAP insurance premium was properly excluded from the finance charge disclosure.

C.   <u>Someone Other Than Johnson Made Disclosures Regarding GAP Coverage</u>

Matthews further argues that the GAP insurance disclosures were not made by Johnson, the actual creditor, but rather by Centrix, Allstate, or First Colonial Insurance Company in violation of TILA. In support of that contention, Matthews cites to the holding of the Court of Appeals for the Third Circuit in *Vallies v. Sky Bank*, 432 F.3d 493 (3rd Cir. 2006). That case, however, is distinguishable from the case at bar.

In that case, Vallies purchased a vehicle from an automobile dealer, Fitts Ford. Sky Bank financed the purchase. The GAP insurance disclosures were made by Fitts Ford and not Sky Bank. The court concluded that "TILA places a clear and affirmative duty on the actual creditor itself to disclose any and all required information pertaining to GAP coverage." *Id.* at 495-96. The court, however, viewed Sky Bank and not the dealer as the creditor obligated to make those disclosures. Further, the court noted that 1) Sky Bank was not a party to the GAP agreement (the agreement was between Vallies and Fitts Ford); 2) the GAP agreement was not incorporated into Sky Bank's loan agreement; and 3)

5

nothing in the GAP agreement suggested that Fitts Ford was acting on behalf of Sky Bank.

The facts differ in the case *sub judice*. First, unlike Sky Bank in *Vallies*, Centrix, the financing creditor, was a party to the GAP agreement with Matthews. Centrix signed the agreement through its agent on a line of the contract entitled "Lender." Second, the terms of the GAP agreement were incorporated into the loan agreement. The "Retail Installment Contract and Security Agreement" clearly itemizes the GAP premium as part of the amount financed. Third, Morales signed the GAP agreement as agent for the lender, Centrix. Hence, the agreement did not just merely suggest but plainly reflected that Morales was acting on behalf of Centrix.

Matthews would have this court view the dealer, Johnson, as the actual creditor with the duty of making GAP disclosures. While it is true that Johnson was a party to the original "Retail Installment Contract and Security Agreement," in that same document, Johnson assigned his rights under the contract to Centrix. In essence, Centrix was Johnson's assignee *ab initio*. As such, Centrix stepped into the shoes of its assignor and was the real party in interest to this contract — that is, the creditor with the TILA disclosure duties. *See Nissan Motor Acceptance Corp. v. Ross*, 703 So.2d 324, 326 (Ala. 1997) ("a valid assignment gives the assignee the same rights, benefits, and remedies that the assignor possesses").

Yet, putting this aside and considering Johnson as the creditor for TILA purposes, the result would not change. The GAP agreement with the requisite disclosures were presented to Matthews in writing, in person, at the dealership, by Johnson's employee Morales. The statute requires only that the borrower sign the GAP waiver form; the creditor's signature is not required. *See* 12 C.F.R. 226.4(d)(3)(i)(C). The fact that Johnson is not a signatory to the GAP agreement does not mean that he did not make the disclosure.

D.  The Misstated Interest Rate

For the reasons explained herein, both the $399 processing fee and the $330 GAP premium were properly excluded from the "finance charge" disclosed by the defendant. Having so found, plaintiff's claim that the disclosed interest rate was in error beyond permitted tolerances cannot survive.

6

**Conclusion**

For these reasons, the defendant's motion for summary judgment is well taken. Pursuant to Fed. R. Bankr. Proc. 9021, a separate order will enter granting summary judgment in favor of the defendant.

Done this the 1st day of June, 2007.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Cameron A. Metcalf, Plaintiff's Attorney
   Jeffrey L. Ingram, Defendant's Attorney
   Curtis C. Reding, Chapter 13 Trustee